IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL ANDERSON, *et al.*,

        Plaintiffs,

v.                                Civil Action Number 3:08cv570

SIGNIX, INC., *et al.*,

        Defendants.

## PLAINTIFFS' CONSENT MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND AWARD OF ATTORNEYS' FEES

COMES NOW the Plaintiffs, by counsel, and in support of their Motion for Final Approval and for Attorneys' Fees and Costs, they state as follows:

### INTRODUCTION

On September 1, 2008 Plaintiffs filed this action on behalf of consumers residing in the United States who requested a background screening as part of their application for a special National Notary Association membership certification as notaries, and were the subject of a consumer report which was used by the Defendants to make a decision about whether to certify them. The Civil Action alleges that Defendants violated certain provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"). Specifically, the Civil Action alleges that Defendants violated FCRA Section 1681b(b)(2)(A) by procuring a consumer report or causing a consumer report to be procured for employment purposes with respect to the consumers without first (i) providing them with a clear and conspicuous disclosure in writing in a document that consisted solely of the disclosure that such a consumer report would be obtained for employment purposes; and (ii) obtaining the consumers' proper written authorization to procure such consumer reports. The class period applicable to the Civil Action's claims under FCRA Section

1681b(b)(2)(A) is from May 22, 2007 to April 22, 2009.  In addition, the Civil Action alleges that, as to a 424-member sub-class of consumers against whom the Defendants took an adverse action based in whole or in part on the consumer report during the time period October 6, 2006 to April 22, 2009, Defendants violated (i) FCRA Section 1681b(b)(3)(A) by not providing the consumers with a copy of their report and a description in writing of their FCRA rights, and (ii) FCRA Section 1681m by not notifying the consumers that the consumer reporting agency that prepared the reports did not make the decision to take the adverse action and was unable to provide the consumers with the specific reasons why the adverse action was taken.

The Civil Action did not seek to recover actual damages, instead alleging a "willful" violation of the FCRA, which could have entitled Plaintiffs to statutory and punitive damages. 15 U.S.C. §1681n.

Following the filing of the Civil Action, the parties engaged in extensive settlement discussions during which Defendants provided Class Counsel with information concerning the consumers who were the subject of consumer reports and adverse employment decisions during the Class Period.  The parties also conducted mediation with JAMS in Washington, D.C., which resulted in this proposed settlement.  As explained below, the Settlement is an excellent result for the Class in that it provides benefits of genuine value without the risks of extended litigation.

The Parties now ask the Court to order final approval of the settlement and Plaintiffs ask the Court to award attorneys' fees and costs to class counsel.  Without question the Settlement, which provides monetary benefit to every class member is as strong a result as Plaintiffs could have obtained for the class.

NNA is to pay $52.00 to each Preliminary Settlement Class member.   This is offered either for their use towards any goods or services available on the NNA website, including NNA

membership dues (most class members are also dues paying NNA members), or if the class member preferred otherwise, a cash payment in that same amount.   The smaller subclass alleging a more substantive FCRA violation will receive a cash payment of $250.00.

Further, the Class Notice process was as well close to perfect.  In this case, largely because of the existing relationship between the class members and the Defendant National Notary Association (nearly all were existing or recent members), actual notice reached over 99% of the class.  After such notice, none of the Class Members have objected or requested exclusion from the Settlement.

Attorneys' fees and costs have also been successfully negotiated to be paid independent of the class recovery.  They were negotiated separately and only after class relief was negotiated. And Defendant has agreed to pay Plaintiffs' attorneys fees and costs independent of the class payments.

Based on benefits for the Class the Plaintiffs submit this Memorandum in Support of her Motion to the Court, pursuant to the Federal Rules of Civil Procedure, for a final order (1) granting final approval to and directing implementation of the Settlement; (2) approving an incentive award to the Class Representatives; and (3) awarding Class Counsel attorneys' fees, costs, and other expenses.

## NOTICE TO THE CLASS

Due process, in the class action context, requires that the form of notice be "reasonably certain to inform those affected."  *Vancouver Women's Health Collective Soc'y v. A.H. Robins Co., Inc.*, 820 F.2d 1359, 1364 (4th Cir. 1987).  Here, the Parties agreed to 1) electronic notification of all class members who are current NNA members or 2) a direct mail notice program designed to reach as many remaining Class Members as possible.  NNA distributed

direct-mail Notice to the remaining Class Members using the last known physical addresses of the Class Members as reflected in NNA's business records.  Because each Class Member was a member at the time he or she submitted the credit application, and the vast majority remain members, was able to achieve electronic mail delivery of the class notice to all but 1451 members of the Class.  *Declaration of Mark Valera ("Valera Decl."), ¶¶ 5, 7; Exhibits A and B thereto*.  Of the 17, 118 Notices transmitted electronically only 1451 were returned or rejected in the electronic system.  *Id.*   Thereafter, physical first class mailing reached 1392 of those 1451 class members (plus one additional class member).   To NNA's's knowledge, there are only 59 members of the putative settlement class as to whom NNA was unable to confirm delivery of the Notice.  Valera Decl., ¶¶ 5, 7. This percentage, over 99%, is close to perfect.

The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985), and other courts —including this court and others within the Fourth Circuit — have approved mailed-notice programs that reached a comparable or even smaller percentage of class members than the Notice reached in this case. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp*., 3:05cv00143 (E.D. Va. August 29, 2006) (Final Order approving class notice with approximately 85% delivery).  In addition, NNA created a weblink notice containing copies of the class notice.

Internet email and website communications are routinely included in notification requirements of class action settlements. See *Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D.Cal, 2006); *Farinella v. Paypal, Inc.*, 2009 WL 1211912 (E.D.N.Y., 2009); *Choicke v.*

*Slippery Rock Univ.*, 2007 WL 2317323 (W.D.Pa., 2007); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 (M.D.Tenn., 2008).

The parties also served notice of this settlement on the relevant state and federal authorities as required by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1715. As is obvious from the Court's docket, none of these agencies or states has objected to the Settlement.

The Parties have complied fully with the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified — in the best and most direct manner possible — of the Settlement's terms and excellent benefits.

## THE COURT SHOULD GRANT FINAL APPROVAL

The Parties seek, pursuant to the terms of the Court's Preliminary Approval Order and federal law, final approval of the Settlement.  The Settlement is the result of contentious litigation and settlement negotiations, conducted at arms' length by an independent and professional JAMS mediator.  Most significantly, the Settlement provides significant monetary benefit to Class Members.

### FED. R. CIV. P. 23(e)

A class settlement, and subsequent dismissal of the case, requires Court approval.  Fed. R. Civ. P. 23(e)(1)(A).  The process for that approval is discussed generally in Rule 23(e) which provides, in relevant part:

**(e) Settlement, Voluntary Dismissal, or Compromise.**

(1)(A) The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class.

(B) The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise.

(C) The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

(2) The parties seeking approval of a settlement, voluntary dismissal, or compromise under Rule 23(e)(1) must file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise.

Rule 23(e) thus imposes two basic requirements on the parties and on the Court before the approval of a class settlement and dismissal.  First, the Court must determine that notice was directed "in a reasonable manner to all class members." Fed. R. Civ. P. 23(e)(1)(B).  Second, the Court must determine that that the settlement "is fair, reasonable, and adequate."  The parties herein address each of these requirements.

Federal jurisprudence strongly favors resolution of class actions through settlement.  *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* Alba Conte & Herbert Newberg, Newberg on Class Actions § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  Federal Rule of Civil Procedure 23 requires Court review of the resolution of a class action such as this one.  Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during the settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (*citing In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).  The Court may approve a settlement only after a hearing and on finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in

light of the relevant circumstances*." In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654,

663 (E.D. Va. 2001).  Additionally, "there is a strong initial presumption that the compromise is

fair and reasonable."  *Id.* (*quoting S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C.

1991)).

### THE NOTICE WAS REASONABLE AND THE BEST PRACTICABLE

In a settlement class maintained under Rule 23(b)(3), class notice must meet the

requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e).  Rule 23(e) specifies

that "[n]o class action may be 'dismissed or compromised without [court] approval,' preceded by

notice to class members."  Fed.R.Civ.P. 23(e).  Rule 23(c)(2) requires that notice to the class

must be "the best practicable under the circumstances, including individual notice to all member

who can be identified through reasonable effort."  Fed.R.Civ.P. 23(c).  The Rule also requires

that the notice inform potential class members that (1) they have an opportunity to opt out; (2)

the judgment will bind all class members who do not opt out; (3) and any member who does not

opt out may appear through counsel.  Id.  The Court must consider the mode of dissemination

and the content of the notice to assess whether such notice was sufficient.  *See* Manual for

Complex Litigation (Fourth) § 21.312 (2004).

As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is

for the Court to determine after examining the available information and possible identification

methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and

amount involved.'" *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003)

(citations omitted).  The Parties' efforts to provide class members with Notice of the Class

Action provide clear evidence that they were the best notice practicable under the circumstances

given:  (a) the available information; (b) the possible identification methods; (c) the number of

class members; (d) the amount of the settlement; (e) the value to the class as a whole by holding up the settlement process for the other class members ; (f) the significant additional cost class members; and (g) the anticipated results of further identification efforts.  Thus, the Court should find that the Notice of the Class Action (and process followed as described above) satisfies Rule 23.

### THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Court's determination of compliance with Rule 23(e)(1)(C) typically requires a two-part analysis.  The Court must determine whether the settlement is "Fair" and then whether the settlement is "Adequate."  The approval of a proposed settlement agreement is in the sound discretion of the Court.  In re Jiffy Lube Sec. Lit., 927 F.2d 155, 158 (4th Cir.1991).

**A.      Fairness.**

The fairness factors pertain to whether there has been arm's length bargaining.  *See In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F.Supp. 1379, 1383 (D. Md. 1983); South Carolina Nat'l Bank v. Stone, 139 F.R.D. 335, 339 (D.S.C. 1991). The court must consider:  (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel.  *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *see also In re Microstrategy, Inc. Securities Litig.,* 148 F.Supp.2d 654, 663-64 (E.D. Va. 2001); *Strang v. JHM Mortg. Securities Ltd. Partnership*, 890 F.Supp. 499, 501 (E.D. Va. 1995).   A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's length negotiations.  *See South Carolina Nat'l Bank,* 139 F.R.D. at 339.

While Settlement was reached early in the case, sufficient information was exchanged between the parties before mediation.  Further, the case was founded upon a FCRA claim with which Plaintiffs' counsel was more than familiar, having prosecuted similar matters against other Defendants.

The Parties fairly reached the Settlement.  The facts and legal issues in the case were agreed upon by counsel at an early stage.  Given the facts and posture of the case, successful informal discovery was more than adequate to determine the strength of this case and thus constructively and fairly participate in settlement negotiations.  *See Strang v. JHM Mortg. Securities Ltd. Partnership*, 890 F.Supp. at 501 ("Although the settlement comes at an early stage in the litigation, even prior to the initiation of formal discovery, the Court finds that Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations").  It is also unlikely if not impossible to fathom how any additional discovery could have improved Plaintiff's ability to negotiate a better settlement.  This is especially true as at the mediation, Defendants' carrier was asserting a stated denial of coverage and the NNA itself was of modest assets.

The settlement process itself is largely beyond question, as it was negotiated under the direct supervision of a federal magistrate judge.  An arms-length negotiation process, as in the present instance, before a skilled and professional mediator more than satisfies the requirement that the settlement not be one brokered through "collusion or coercion."  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005); *Weiss v. Regal Collections*, 2006 WL 2038493 (D.N.J. July 19, 2006).

Class counsel also satisfies the procedural fairness requirement of competent representation. Class counsel have considerable experience in this field and have litigated or are

currently litigating numerous class actions under the Federal Consumer Credit Protection Act

(CCPA), including the FCRA.

**B.      Adequacy.**

The Court must also determine whether the proposed class settlement is substantively

"adequate."  The Fourth Circuit's decision in *Jiffy Lube* explained that the adequacy inquiry is

guided by evaluating:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the
> existence of any difficulties of proof or strong defenses the
> plaintiffs are likely to encounter if the case goes to trial, (3) the
> anticipated duration and expense of additional litigation, (4) the
> solvency of the defendants and the likelihood of recovery on a
> litigated judgment, and (5) the degree of opposition to the
> settlement.  Jiffy Lube, 927 F.2d at 159.

*In re Microstrategy, Inc. Securities Litigation,* 148 F.Supp.2d at 665.

By its terms, the Settlement provides monetary consideration to all class members.

Additionally, even though it still adamantly disputes liability in this case, NNA has agreed to and

has changed its FCRA compliance practices.  Under any stretch of the imagination, this

settlement is fair, reasonable and an excellent result for the class. Additionally, the case was

defended by opponents with considerable experience and prior success and obtaining a jury

determination that the violation was willful would always remain a challenge in the case.

"Thus, the old adage, 'a bird in hand is worth two in the bush' applies with particular

force in this case."  *See Cardiology Associates, P.C. v. National Intergroup, Inc.,* 1987 WL 7030,

at *2 (S.D.N.Y. 1987) (concluding that because continued prosecution of the action would have

been expensive and time-consuming, and would have involved substantial risks, "it [was] not

unreasonable for the plaintiff class to take a 'bird in the hand'"); *Alvarado Partners, L.P. v.

Mehta*, 723 F.Supp. 540, 547 (D.Colo. 1989) (noting that "[i]t has been held prudent to take 'a

bird in the hand instead of a prospective flock in the bush'" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting *Chas. Pfizer & Co.*, 314 F.Supp. at 740)." *In re Microstrategy, Inc. Securities Litigation,* 148 F.Supp.2d at 667.

Finally, the Court must consider it an important statement that not a single class member has objected or opted out. The Settlement has to be seen as a significant success. "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.' *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir.1975)." *Id.* at 668. As Judge Ellis of this court has previously explained, "[b]ecause 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy,' the lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy." *Sala v. National R.R. Passenger Corp.,* 721 F. Supp. 80, 83 (E.D. Pa. 1989)." *Id.*

## CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS PROPER

In the Fourth Circuit, attorneys' fees in common fund cases such as this one are generally awarded on a percentage-of-the-recovery basis. *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the

current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

In this case, the Defendant agreed not to oppose Class Counsel's fee request of up to 25% of the monetary value of the settlement.

Percentage-fee awards are exactly what the name suggests—class counsel fees are determined as a percentage of the total settlement fund.  Courts across the country typically award fees of a least twenty-five percent or more in cases where class counsel generates a common fund for the benefit of the class.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (explaining that "the vast majority of courts now permit or direct district courts to use the percentage-fee method in common-fund cases" and "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund"); *see also In re RJR Nabisco*, No. 88 Civ. 7905, 1992 WL 210138, at *6 (S.D.N.Y. Aug. 24, 1992) (recognizing that courts increasingly use the percentage of the fund method over the loadstar method in awarding fees). In fact, a comprehensive study of attorneys fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount."  Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:  An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004).  This holds true even in instances where the class recovery runs into the hundreds of millions of dollars.  *See, e.g.*, *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 295 (1st Cir. 1995) (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million).

Courts generally award fees of between twenty-five and thirty-three percent of the common fund notwithstanding the amount of the fund.   *In re US Bancorp Litig.*, 291 F.3d 1035,

1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, 159 F.3d 1346, 1346 (2d Cir. 1998) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d at 631 (concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97CV69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

The requested fee fits squarely within these parameters. The fee of 25% is directly proportionate to the success of the work performed by Class Counsel.[1]

Given the work performed in the case, the benefits obtained for the class and the cy pres award, the reasonableness of the attorneys' fee requested should seem self-evidently reasonable. However, the Court is also in a position to compare the settlement and attorneys' fee requested in this to similar national FCRA cases settled on a class basis. Until a more recent case settled in this Division, *Williams v. Lexis Nexis Risk Management*, Civ. No. 3:06cv241 (27.5% of $22 million fund approved by Judge Payne), the largest FCRA class case settled was for a cash

---

[1] In fact, Class Counsel Bennett has remained consistent in his fee requests in other class settlements, including at least one in this Division this year that yielded a fee of less than $7,000 in a class case in which the class size discovered was much lower than initially estimated.

payment of $15,000,000 – all of it approved as attorneys fees and none of it paid to the class. The benefit to justify such a fee was simply the injunctive relief and remedial changes to the manner in which each national consumer reporting agency would furnish class member credit reports. *Clark v. Experian, et al.,* 2004 WL 256433 (D.S.C. 2004).[2] In contrast, Plaintiff's counsel still seeks only a proportionate recovery. Because Class Counsel's requested fee is reasonable under the circumstances of this case and the applicable law, the Court should award it.

The Court should also approve the modest incentive or service awards for the named Plaintiff. The Settlement will provide the Plaintiffs $2500.00 for their service. Courts routinely award service or incentive awards to named plaintiffs in class actions. In most instances, that award is in the range in this case. *See e.g. Staton v. Boing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003); *In re Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This incentive award is also paid independent of the class recovery and is contained within the 25% attorneys fee award.

---

[2] Class Counsel appeared in the case as lead objectors' counsel. He was successful in forcing some changes to the settlement, but not with respect to the payment of such a large fee to the attorneys to the exclusion of the class.

## CONCLUSION

The Parties have reached a Settlement in this case that provides a genuine benefit to Class Members.  The Settlement is an excellent result considering the size of the class and the cap on total possible recovery.  Each Class Member is entitled to monetary consideration as a result of the Settlement, regardless of whether they were aware Defendant's conduct potentially violated the FCRA or whether they suffered actual harm.  In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal satisfy the Fourth Circuit's strictures for final approval.

Accordingly, the Parties ask the Court for an Order, substantially similar to the Proposed Order filed concurrently with this Motion.

RESPECTFULLY SUBMITTED,

MICHAEL ANDERSON, et al

_____/s_____
Leonard A. Bennett, Esq.
VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Mark Campbell Shuford
Kaufman & Canoles PC
1051 E Cary St
PO Box 27828
Richmond, VA 23261
804-771-5700
Fax: 804-771-5777
Email: mcshuford@kaufCAN.com

Matthew B. Chmiel
Kaufman & Canoles PC
1051 E Cary St
PO Box 27828
Richmond, VA 23261
(804) 771-5791
Fax: 804-771-5777
Email: mbchmiel@kaufcan.com

Arthur F. Silbergeld
Bingham McCutchen LLP (Santa Monica-NA)
The Water Garden
Fourth Floor North Tower
1620 26th Street
Santa Monica, CA 90404
310-255-9077
Fax: 310-907-2077
Email: arthur.silbergeld@bingham.com

David John Prieto
Bingham McCutchen LLP (K St)
2020 K St NW
Washington, DC 20006
202-373-6000
Fax: 202-373-6451
Email: david.prieto@bingham.com

Ky E. Booth-Kirby
Bingham McCutchen LLP (K St)
2020 K St NW
Washington, DC 20006
202-373-6795
Fax: 202-373-6001
Email: ky.kirby@bingham.com

Stacy Weinstein Harrison
Bingham McCutchen LLP (Santa Monica-NA)
The Water Garden
Fourth Floor North Tower
1620 26th Street
Santa Monica, CA 90404
 (310) 255-9169
Fax: (310) 907-2169
Email: stacy.harrison@bingham.com

_____/s_____
Leonard A. Bennett, Esq.
VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
lenbennett@clalegal.com